This next case is case number 4-16-0709, Board of Education of Lincoln Elementary School District 27 v. Hymans Engineering. Counsel, could I have your appearances, please? Bruce Bonczuk, representing the Board of Education. Thank you. Patrick O'Carra, for Hymans Engineering. All right, thank you. Mr. Bonczuk, are you ready to proceed? Yes, sir. Before you proceed, I'd just like to state here for you both that Justice Steigman will be a fully participating member of the panel deciding this case. He is unable to attend oral arguments today due to a death in the family, but an oral recording of the proceedings today will be available to him. He'll be able to listen to those, and he will then be part of the decision that is ultimately reached in this case. All right, thank you. And you may proceed. Good morning, my name is Bruce Bonczuk. As noted, we represent the Board of Education of Lincoln Elementary School District number 27. For reference, this was an assignment of a third-party claim that the architect had against Hymans Engineering as part of the construction of the school. I will use the term MML as Molot-Morris-Leonati. I believe it was in the brief, or sometimes I use the term architect when I do represent issues related to the architect. So, as we approach this case, I would ask the court to think about the overriding legal principle that's built into this case. And that's the Illinois Uniform Arbitration Act. Anytime there's a written agreement or a contract that requires arbitration, that statute applies. And I think as you'll see in our discussions today, there was a lot of interplay in that statute and how it was interpreted in this particular instance. At some point in time, you know, once the agreement exists there, that's going to touch on all these issues to some extent, and I'll be referring to it quite a bit. There were three grounds for appeal. One of them was the fact, was the application of the Uniform Arbitration Act and procedural arbitrability and how it was interpreted. The second was the fact of the 2008 stay that was held in this matter. And then finally, whether there was the existence of genuine issues of material fact precluding dismissal under a 2-619 motion. The first issue is whether the court ruled upon issues of procedural arbitrability reserved for an arbitrator to decide. Before we can approach that issue, there's a discussion related to the standard of review. The board has indicated that it believes it's a de novo standard, and Hyman's Engineering has suggested there's an abuse of discretion. The reason the board believes it's a de novo standard is that generally the 2-619 motions are reviewed under a de novo standard and recited the Van Meter case. Second is, again, the Illinois Uniform Arbitration Act applies to arbitrability issues, whether they coexist or whether they're obvious on their face. The fact of the matter is that's a statutory interpretation, and as a substantive law, the court would always review that under de novo standard. Now, we approach this from the standpoint, too, that the court side of the Daniels case is part of its order to deny the motion for reconsideration, which we'll discuss. But that case is a little bit different in the sense that you have a supposed new theory of a legal theory that was interposed at that point in time, and the court used the abuse of discretion standard to basically say, I'm not going to consider it in the Daniels case. But the court still ruled on the issue of a legal issue that was in there, and the legal issue that the court ruled upon, the appellate court found, was that was a correct ruling. In this instance, we're arguing that that's not a new legal theory that was presented, that the arbitrability has always been underlying in the case, and that it's not a new legal theory, but it's an error in the application of law that the trial judge made. And as part of that, we look at that, again, what was the underlying law that was misapplied? We'll get into that a little bit deeper, but it, again, reviews to the arbitrability. Arbitrability is in that case. It was referenced by both parties as the discussion went forward. And so, therefore, the issue is, is did the court apply the Illinois Uniform Arbitration Act properly? And that's why we believe that the court should review this under de novo standard. So what law was misapplied by the trial court? Well, the issue became substantive versus procedural arbitrability. And the question there turns on, who decides that? Does the court get involved, or does an arbitrator get involved, or what's the designation split between the parties? Well, substantive arbitrability goes to the question of, is there an agreement to arbitrate? Okay? And that's clearly for the court. Case law has been definitive in that. And when you read the Uniform Arbitration Act, you know, it says, if the court finds a written agreement to arbitrate, then we proceed. Procedural arbitrability, on the other hand, is related to issues of timeliness, the sufficiency of the demand, waiver issues, and contractual time limitations, which is what is involved in this case. So procedural is for an arbitrator, and the courts have looked at this over the years and said, this is best suited for an arbitrator to look at. You know, we're going to use the arbitrator's custom and practice, his experience in these situations, and there are several cases that we quoted, the Amalgamated Transit Union, the Village of Carpentersville, and from this fourth district, the Lamar County v. Johnco Construction, which confirmed how this application of procedural versus substantive arbitrabilities decided. Now, there's a little twist here in the sense that the courts also have to decide condition precedence, because in a sense, the condition precedence to arbitrate, such as in this case mediation, is really more of a legal issue from the standpoint, is there a true written agreement to arbitrate? So the condition precedence, such as the mediation of this issue, or in some of the other cases that the court looks at, is there some sort of trigger that makes this an actual written agreement to arbitrate? And I think that's one of the distinctions we have in this situation. So you can't have the arbitration until that trigger is going on there, but once it is, then it's within the purview of the arbitrator. So in this case, Hyman's 216 motion to dismiss was a condition precedence. When that was filed, Hyman's had basically raised an affirmative defense of the statute of limitations with respect to the condition precedence of this case. But Hyman seems to want to ignore the issues between substantive versus procedural arbitrability in the sense that they're arguing that the board sought a finding of waiver to some existence. The fact that we raised a waiver issue of the statute of limitations should have caused a problem here in that we waived our right to arbitration by setting that forth. But because this is a condition precedence situation, that didn't occur. The court had the authority to look at the condition precedence to see if the mediation itself was triggered or completed or something along those lines to get past this first step to say that we can now proceed. Now, where the problem became was that we had this mediation demand and the court looked at it. And the court actually said the demand was made within a reasonable period of time. The finding of the trial judge said, you know, there was a mediation, now here's some extenuating circumstances. What we kind of went off board was, is now we start speaking about the fact that whose right or whose obligation was it to proceed underneath the arbitration provision or the mediation provision? Or how did waiver interplay with the different parties? And that's the situation to where this court and other courts have held that that's a procedural issue and that should not be for the court to decide, that should be for an arbitrator to review. Because, again, they understand the interplay of the construction industry and, again, we're using arbitration rules in the construction industry. Arbitrators would be, you know, schooled in that area and they would proceed in that fashion. So because we started off, it seemed like, right on the right foot and that we were focused okay, but at some point this proceeding morphed into an issue of procedural arbitrability at that point. In other words, the court... Would it be true that one of the reasons it morphed into that is because nobody did anything that would be absolutely clear about are we going to mediate? Are we going to go to arbitration? Are we going to say mediation is unsuccessful, thus we need to arbitrate? Are we going to ask the judge for an order to arbitrate? I mean, all of that mishmash which went on for several years, I think, is what put the case in a posture where we're still arguing about whether it was a stay or if it affected timeliness or the statute of limitations or if anybody really made a demand or if anybody sincerely thought that, yeah, we could mediate or arbitrate this and we end up going to court. The parties did this themselves. I mean, that's a good summary of where the confusion arose and, again, at this point in time, the board is arguing that that should be for the arbitrator to review. How did the parties interplay? Who did what, when, and where? And how did this unfold into the position of an arbitration? Now, if it went to an arbitration or the arbitrator decided that there was an issue that could be arbitrated, then we'd go through that process, but under the stay that was issued, the court would still have the overall authority to review that, you know, should someone challenge the arbitration's order or the arbitrator's order. So when it morphed into this situation, we then became focused on these procedural issues, as the justice just indicated, and we kind of lost track of what was going on here. Now, the court, you know, I believe was trying to sort through these issues and it seemed like he was heading in the right direction, and then the focus got lost. And we ended up in this procedural issue. His order came out and said, you know, I'm sorry, guys. You know, I think the school board, or not the school board at the time, but Malak Morris-Leonati, who had the action, should have been the party that was pushing for the arbitration or the mediation. And that falls into the category of this procedural arbitrability that we're arguing that was an error of the law and not necessarily a new legal theory that was presented as argument in the motion for reconsideration. So if you step back to 2008, the court found there was an express arbitration agreement. They looked at it and they said Uniform Arbitration Act. You know, apparently, you know, there is no transcript of that, but, you know, the result of the matter is the court ordered a stay and said, let's go to arbitration and mediation. There's a discussion about whether that order is an order compelling or whether it's just a suggestion, but I don't believe that's an issue here other than the sense that the court recognized that a stay was proper under these circumstances, and the party should proceed under their written arbitration agreement. Now, the court did say that, you know, the matter was stayed in pending mediation and arbitration by the parties for the contract. Okay, now, I'll admit that's somewhat broad, but it still indicates that the court said, I know there's a written agreement here. Go arbitrate something. Now, the board argues that that places the matter in kind of a status quo. It's a stay action here. Put the whole issue on hold while the parties went through this process. Now, fast forward to 2016, and again, there's no dispute, I believe, that the Uniform Arbitration Act applies in this case. There's still a written agreement, and the court denied the, excuse me, granted the motion to dismiss, and the board filed a motion for reconsideration and raised this issue of an error of law. We basically told the court that we think you stepped over into the procedural arbitrability, and therefore, you know, you went too far, you know, and that's an error of law in this situation. Now, we discussed that, you know, in our brief that we argued that some of the issues is that the Hyman's argues that, you know, this was a new legal theory, but our discussion is that it was before the court. You know, there was discussion in the court and by both Hyman's and the board about these issues to the perspective of what we were looking at here and where we were trying to go with it. So, I don't think that the parties could say that, you know, this is a total surprise that, you know, underlying the uniform, Illinois Uniform Arbitration Act, this whole principle is kind of like the foundation and bedrock for that. So, as the board went forward, we indicated to the court that, you know, this, we believe, was an error, that the Menard County case should govern in this situation and that the court should revise its order or change its order, you know, to say that the case is still in effect. Now, what about the argument of waiver? You know, I mean, there is a discussion that there was some forfeiture of our argument, but again, we believe that Hyman's himself put the issue of arbitrability on the table when he was discussing the issue with the judge and talked about how procedural arbitrability would provide. So, it's not really a legal, new legal theory that we're looking at, but, and we advised the court of that. Now, even if the court, or this court, finds that there would be some issue of forfeiture in this argument, you know, there's still policy reasons here for the court to consider overruling this, the trial court, and that comes from the Bank of America case that we quoted in there. You know, again, this case was looking at a statutory interpretation and the situation was probably worse than some other situations the court has seen as far as the date and timing about when the actual issue, new legal theory, was raised in a motion for reconsideration. I mean, it was at the very end of this case, you know, the parties were aware of it, you know, understand the court's recent ruling and advantage hospitality, you know, doesn't exactly care for the motions for reconsider, but I believe there's a distinction in here in the sense that this was underlying and that it was proper before the court. And again, if the court does find a forfeiture, the policy reasons behind it of maintaining this whole structure of substantive versus procedural arbitrability would seem to be a good basis for the court to overrule this finding to where the trial court stepped out a little bit too far. There's a practical reason here and I think the courts recognized it to some extent. You know, if we don't have this, does this allow the parties to manipulate the process somehow and be in the courts rather than down with an arbitrator sorting through these issues? So the board believes, at least under those positions, that the substantive versus procedural arbitrability can be reviewed by the court and again on a de novo basis based on the facts of this case. Now, Hyman's asserts that this is contractual limitations now, you know, that this statute of limitations kind of, again, we morphed from this condition preceding into this substantive or procedural arbitrability and now there's this issue of contractual limitations. Well, I think the cases are fairly clear to the court that when you get into this type of contractual limitation and the Menard County case is at hand, is that that is for an arbitrator to review. That's for an arbitrator to look at first before it goes to the court for a final review if the party is so contested. The same thing with the argument about the waiver. That the board may have waived its right to arbitrate by the way it acted underneath the procedures and the processes of mediation or not proceeding with it. Again, waiver is also a procedural arbitrability issue. So it would seem, at least under these circumstances, that the court, the board, went too far. And in the order that's where we were issued. And again, the board looked at this originally as a kind of compartment here that, you know, we're starting off with this process and we were pretty confident that mediation had been demanded and even as the trial court looked at it, they said it was demanded. But then the process, the wheels fell off the train after that. So equally important in this discussion too is the idea of the timing of the mediation. There's the issues regarding the demands, you know, what the timing is or, you know, who is supposed to do what, when, and where. But there is no completion date in this clause, in the contract clause, that says mediation or arbitration would have to be complete by a certain time period. What the contract does say is if mediation doesn't occur, then it shall be subject to arbitration. So, you know, again, this is something that I believe an arbitrator would have to look at to see the mechanics of what happened here. Did mediation get waived? Did something happen that way? Or where did we go from there? So turning to the issues of, genuine issues of material fact in this case. The board has indicated that, in its brief, that, you know, attaching a few pieces of paper to the back of this pleading would not be sufficient to withstand the fact that there might be a contested issue. The board said in its reply that, you know, look at this. You know, we think that there's a discovery rule issue here, that these facts are not genuine, you know, that we don't exactly, we didn't pick them apart one by one, you know, but we gave the court notice at least that these were issues before. And so with the demand being made, you know, what is the requirement for a 2619 motion? And as we quoted in the brief, we think it's higher than just, you know, attaching a few pieces of paper. Why wasn't there an affidavit out there or something like that that could be challenged? You know, where are we looking at? Did we really have an evidentiary hearing or was this just something in support of the motion? If it's a 2619 motion, it should be much stronger than what was occurring in this case. Did you object to the correspondence being attached as it wasn't an affidavit in the trial court? No. No. Don't you forfeit that issue then by failing to raise an objection in the trial court? Well, but I believe in the reply brief we raised that issue in respect of what it was. The court, I don't believe, you know, I won't go that direction, but, you know, from the perspective of what the courts saw or what the parties were putting in there, again, this is just some future evidence that might be applied at some point in time. So I don't believe that at that point, you know, there was a need to make that objection, although the court may disagree with this. The effect of the state is the last issue. Am I out? You are. Okay. You'll have time in reply. Thank you, sir. Mr. O'Hara. Thank you. May it please the court. I think it's important in the first instance to realize that there's no demand for mediation or no demand for arbitration pending at this time. I think it's a remarkable set of facts that we have a contract that was entered in 2001, and as I indicated in my motion to dismiss, the issues regarding the alleged defects, which occurred at a time after construction occurred in 2004 at the latest. We're talking about allegations of design defect. So clearly the breach had to have antedated the May 2004 emails that there were alleged defects because we're talking about design, not construction. My client didn't have anything to do with the construction. It had to do with the design of the mechanics. And it seems untoward, quite frankly, at this point, that we have a situation where we don't presently, in April of 2017, have a demand for mediation pending or an arbitration demand pending. And I thought that was pretty clear in terms of bringing that matter to the court. And we get to the situation here where the board, again as an assignee of MML's purported claim here, and it's a remarkable set of circumstances as well because I've never had a case in 38 years of practicing law where I didn't hear from the other side for, even after the initial pleadings, for seven and a half to eight years. Not a phone call, not an email, not a pleading. I had to go down to the basement and try to find the file when the board suddenly appeared out of nowhere after eight years and said, now we're the board, and we're going to pursue this because we've made our settlement with MML. The problem I also see in this case is that the board continually says somehow that a demand for mediation is a condition precedent to the arbitration and obtaining a remedy in this case. Well, that's not true. That's not what the contract says. The contract says that mediation, not a demand for mediation, but mediation is a condition precedent. And it's very clear from the facts that the claimant, which was MML originally, made a demand for mediation and then simply abandoned that process. They were the claimant. We had a mediator selected. I cooperated with that. My client did as well. We had a mediator named. And MML just dropped off the planet. Would it be correct that there was possibly a dispute about who ought to be present at mediation? I can explain that. I can explain it very quickly. I think it needs to be said because the board continually makes, somehow wants to incubate my client for that issue. And what occurred is very simple, is that MML wanted the board to be part of the mediation. The contract doesn't provide for any other party to the mediation other than my client and MML. When the attorney for MML approached me and said, I want the board to be included in the mediation, I said, sure. As long as you've got the subcontractors in there, too. Because we ought to have all the parties here. MML couldn't get the subcontractors in. The request was made of who is currently the attorney for the board. And that couldn't be done. So when MML couldn't get everybody involved, then we decided, we'll just proceed with just us two. That's why we picked a mediator. Once we picked a mediator, then MML wasn't to be seen. Now we're at the point where I want to ask the question. At that point, it would appear that mediation is not going to occur. I don't know. I guess they could renew their request. I want to help with the process. One side or the other should have then said, or should they have said, for whatever reason, we've not been able to get together on mediation. I now demand arbitration. Well, presumably that would be the claimant that wants to remedy. Right. I'm not asking at that point who should do it. I'm saying, is that what would occur in the natural process? Frankly, I think in the natural process is that I didn't waive mediation. I'm not suggesting that you did. I'm asking about the process where, for whatever reason and whosoever fault, mediation doesn't occur. Justice, what I'm saying is I don't think arbitration necessarily followed. I think a renewal of the mediation demand should have taken place there because mediation continued to be a condition precedent to the arbitration. But MML didn't ask for a renewal of the mediation demand. But if you looked at each other across the mediation table and said, I'm not going to mediate with you. We need to go to arbitration. I would concur completely in that regard. That didn't occur. That did not occur. MML just didn't respond to the inquiries of the American Arbitration Association, not once, not twice, but three times. There was no request to the circuit court to compel mediation. There was none. Or arbitration. And now we have it. That's 13 years later from 2004 and 16 years later, 17 years later from the date of the contract. And I think that's prejudicial in terms of timing, in terms of being able to in any way defend. But we get to the circuit court in Logan County and I point out that the contract itself said under no circumstances, in no event, it says, shall a demand for either mediation or arbitration be made after the time within which such a cause of action could be brought pursuant to the statute of limitations applicable in the state. And certainly 10 years had passed. So there's no going to mediation at that point through the American Arbitration Association. There's no going to arbitration because the condition precedent, and that is the making a demand to the American Arbitration Association, had passed. But that's a question of arbitrability. And again, we go back to the notion that the board never brought up arbitrability at the hearing on the motion to dismiss. And I point that out because I was taken back, quite frankly, that response that I made to what I certainly consider a hypothetical question by Judge Funk, the circuit court judge, about what would the American arbitration say under this particular circumstance. And I mentioned, well, I would tell them I think at this point it's a circuit court's authority because in no event can we go to mediation, in no event can we go to arbitration, that it's a circuit court's decision to make the decision. And then the board, in reaction to that, didn't argue to the court and said, well, Judge, you should hold off then in making any decision because we have an arbitrability issue. If they wanted arbitrability to be an issue, that certainly would have been the time to bring it up if that's what they were trying to reserve as an issue for the court, for the motion for reconsideration, or for this appellate court. But they didn't do that. Instead, they argued, and I got part of the transcript here, what the board argued is that somehow, some way, that their initial demand for mediation metamorphosed into a, both a demand for mediation and arbitration. The court rejected that notion because it looked at the application for the mediation and it said the application is for mediation. It didn't say it was for arbitration. And so what the board did is simply ask the court to make a decision on it. Ask the court to not exercise its authority in terms of making a determination and to defer to an arbitrator. Instead, the board said, make a decision. And it also argued waiver. As the able counsel for the board has indicated, waiver is an issue, it says, is an issue of procedural matters for an arbitrator to decide. But they didn't ask for the court to defer to an arbitrator with regard to the issue of waiver. Instead, it asked the circuit judge to act to make a determination as to waiver. And clearly, that's in itself a waiver of its argument about arbitrability. And what essentially occurred here, of course, is that the board asked, participated fully in the court proceedings, asked the court to make a determination, and only when the court made an adverse decision, did it decide to go back and say, oh, well, the court didn't have authority after all to make that decision. I submit that that's not appropriate. I think the case law buttresses it. Now, Judge Funk could have, at the motion for reconsideration, exercised his discretion and allowed the board to bring up arbitrability at the motion for reconsideration. That's certainly within his authority, but he chose not to. He indicated that the board didn't give any explanation at all why the issue of arbitrability had not been brought up at the motion to dismiss and exercised his discretion. And I believe that pursuant to the case law, that that's the standard here of review to determine whether Judge Funk abused his discretion. The problem with that for the board is that the board didn't provide an explanation. We can't go back and say, well, Judge Funk was wrong about his decision in light of the explanation that the board provided at the motion to dismiss hearing. The board didn't provide any explanation for it. And in light of that, I don't see how a reviewing court could determine that Judge Funk's decision is somehow an abuse of discretion. My understanding of an abuse of discretion standard is that it has to be such that no rational reviewer could find that or make that decision. In the absence of a reason or rationale for the board not to bring up arbitrability, I don't see how they could possibly surmount the standard of review of an abuse of discretion. Clearly here, there's also in the brief of the board, it indicates that somehow Judge Funk didn't rule on the motion to strike because I had put in a motion to strike on any allegations or vermons having to do with arbitrability, the motion for reconsideration. But I think that matter is moot. I think it was all merged into the order to dismiss because the court found not once, but really three times that the board simply didn't bring up the issue of arbitrability. And it should not be able to bring it up here. I don't think there's any overriding policy decision here. Indeed, I think there are very good arguments to be made about the notion of arbitrability here. But I don't think I should have to make them because I think the issue is waived. And it was waived back in June of 2016. And I don't think that the board gets a new bite of a new apple. What the motion for reconsideration is, the purpose of it is for the court to reconsider something that it had already determined and had been placed before as an issue. Clearly, clearly there was no issue brought forth to the court to determine arbitrability by either myself or the board. And so it can't reconsider what it didn't consider in the first place. And I think the board is precluded conclusively from going to that area. Beyond that, I would point also that the notion of what the breach consisted of, I think I touched on it before in terms of where the breach occurred. The board has never suggested any date other than the one I selected or indicated should be certainly the date of breach. What they argued instead was, well, we think the breach should be when we got finished trying to fix the alleged problem. Well, that's not what the loss provides. The loss clearly provides that a breach of this nature occurs when the contract is breached, not when the damages are determined. And so when we had those emails that never were objected to, in fact, what was placed in response to those are more emails and correspondence by the board. Again, not verified, not supported by affidavit. And the board was standing there, just as I was, in front of Judge Funk, asking for a decision. And once Judge Funk gave us that decision, I don't think it's appropriate, again, for the board to be able to say, well, now we don't like his decision. Let's go back and find all the things that we did complain about, we didn't object to, and somehow say that we get another buy of the apple, a new apple. I just indicate that, again, I think that's appropriate. I think that Judge Funk made the correct decision and that his decision should be upheld. Thank you so much. Thank you. Rick Lott? The exchange between counsel and the court here kind of summarizes the whole argument about procedural arbitrability. You know, we were asking, again, about the demand for mediation, the trigger point of the condition proceeding. The contract says that mediation shall be a condition proceeding, but again, it doesn't tie it in to whether it's a demand or completion. As the court noted, nothing happened. Okay? So, at that point in time, what were the parties' responsibilities? I don't believe it's for the court to make that decision. Again, because what was the interplay of the parties that were behind what was going on here? Was it the demand that triggered it? The fact that there was no mediation? When you read the contract terms, it just says that mediation does not resolve the issue, it shall be subject to mediation. There was no mediation. So, apparently, the problem didn't get resolved. So, arbitration would be the next step of the parties, because that is what the contract states. So, I think it's, again, an example of exactly why an arbitrator should decide this, and to some extent, I guess, Hynens is requesting the court to step in here and make these types of procedural decisions in this matter. And I think that would be adverse to the cases that it's done in the past as far as arbitrability. And, again, when we talk about this hypothetical situation, I mean, we can argue it's hypothetical, we can argue it's this, but apparently, the judge relied upon it when he made his decision. He went forward with this, and he took the extra step,  but he took the extra step and said, no, wait a minute. Now, I think, Mr. Malakmors, Leonati, are the guys who are supposed to pursue this. You know, I believe we argued in the trial court that it didn't. Who knows which party it was at that point in time? That was a dual obligation almost at some point in time that somebody should raise the issue. I mean, I understand that there was no communications, apparently, between MML and Hynens for a period of time, but by that same token, what obligation did Hynens come back to have to say what's going on here? Again, I think that falls into this bailiwick of what would an arbitrator look at it, and everybody's unhappy with the decision. As the case has stated, it would be reviewable back at this court at some point in time as to what decision the arbitrator was, whether it was within the law of how the contract was interpreted. So, finally, I think that the argument about the breach, again, we're going to rely back on this idea of the discovery rule. You know, I don't think Malakmors, Leonati, or the board had any idea exactly when the breach occurred. There was a piece of paper that said, okay, here's some issues with the heating and air conditioning system. That was in 2004, I believe is what the council called it. But what happens in the future is when the building got started, you know, you might have this piece of correspondence going on here, and now all of a sudden the building gets built, it could be two, three years later, and you have an engineer who argued with Malakmors, Leonati, about how this process worked. Did he do it right or not? So, the discovery rule, I believe, is going to, again, fall in place to this, and it's not as simple as the council would like that. It was just a simple breach in 2004. Thank the court for its consideration. All right. Thank you. Thank you both. The case will be taken under advisement, and a written decision shall issue.